# ILLINOIS STATE BOARD OF EDUCATION
# IMPARTIAL DUE PROCESS HEARING

Student, by and through her Parents[1]

     v.

District[2]

Case No. 2024-0219

Leah Trinkala
Impartial Hearing Officer

## FINAL DETERMINATION AND ORDER

### JURISDICTION.

The undersigned has jurisdiction over this matter pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S. C. §1400 et seq. and the Illinois School Code, 105 ILCS 5/148.02a et.seq.

### PROCEDURAL BACKGROUND.

On May 24, 2024, the Petitioners (Parents) filed a due process complaint (Complaint) against the District on behalf of their eleven year old daughter (Student) with a disability.[3] The Student has been eligible for an IEP under the category the primary category of Autism Spectrum Disorder (ASD).[4] The Parents initially filed this Complaint alleging placement in a separate therapeutic day school was not the least restrictive environment for the Student.[5] The Parents are represented by Charles Fox and Julie Welsh of the Law Offices of Charles P. Fox. The District is represented by Laura Sinars and Jessica Carbonaro of Robbins Schwartz, LLC.

On May 28, 2024, the Illinois State Board of Education (ISBE) appointed the undersigned as the Impartial Hearing Officer (IHO) in this case.[6] On June 11, 2024, the parties requested an extension of the 45-day timeline to allow additional time to complete mediation.[7] The request was granted.[8] The Prehearing Conference was scheduled for August 6, 2024 and

---

[1] Personally identifiable information is found in Appendix A.
[2] Personally identifiable information is found in Appendix A.
[3] IHO Ex. 1.
[4] IHO Ex. 16.
[5] IHO Ex. 1.
[6] IHO Ex. 2.
[7] IHO Ex. 6.
[8] IHO Ex. 6.

the new decision due date was extended to August 31, 2024.[9] The parties participated in mediation on July 11, 2024 and on August 14, 2024 and were unable to resolve this matter.[10]

On August 16, 2024, the parties requested a continuance of the Prehearing Conference and an extension of the 45-day timeline in order to have additional time to prepare for a Prehearing Conference and a hearing.[11] The continuance was granted and the Prehearing Conference was rescheduled for August 24, 2024 and the new decision due date was extended to October 25, 2024.[12][13]

On August 23, 2024, the Parents filed a Motion for Leave to Amend the Complaint.[14] On August 26, 2024, the Parents were granted leave to file an amended complaint by September 12, 2024.[15] The parties requested a continuance of the Prehearing Conference and an extension of the 45-day timeline.[16] The continuance was granted and the Prehearing Conference was rescheduled for September 26, 2024 and the new decision date was set for November 1, 2024.[17]

The Parents filed an Amended Complaint on September 12, 2024.[18] The Amended Complaint raised new issues which reset the timelines in this case.[19] The new decision due date was changed to November 26, 2024.[20] The District filed its Response to the Amended Complaint on September 25, 2024 and the parties submitted their prehearing disclosures.[21] On September 26, 2024, the parties requested a continuance of the Prehearing Conference due to a pending placement for the Student and the parties were waiting for the decision regarding the placement.[22] The request was granted and the Prehearing Conference was rescheduled for October 10, 2024.[23]

The Prehearing Conference occurred on October 10, 2024.[24] Hearing dates were set for December 3, 5 and 10, 2024.[25] A Prehearing Report and Order was issued on October 17, 2024.[26] On October 26, 2024, a Revised Prehearing Report and Order was issued to correct the date for the 5-day business disclosures for the scheduled hearing.[27]

---

[9] IHO Ex. 6.
[10] IHO Ex. 9 & 10.
[11] IHO Ex. 10
[12] IHO Ex. 10.
[13] IHO Ex.11.
[14] IHO Ex. 11.
[15] IHO Ex.12,
[16] IHO Ex. 12.
[17] IHO Ex. 12
[18] IHO Ex. 14.
[19] IHO Ex. 14
[20] IHO Ex. 14.
[21] IHO EX. 16.
[22] IHO Ex. 17.
[23] IHO Ex. 17.
[24] IHO Ex. 19.
[25] IHO Ex. 19.
[26] IHO Ex. 19.
[27] IHO Ex. 21.

The parties exchanged, via email, their five-day business disclosures on November 22, 2024.[28] On November 26, 2024, the Parents withdrew Issues a and b from the Revised Prehearing Report and Order.[29] The Parents are no longer seeking compensatory education and reimbursement for expenses.[30] The Parents are only seeking a mutually agreeable therapeutic day school program for the Student.[31] The December 3, 2024 hearing date was stricken.[32] On December 3, 2024, the parties informed the undersigned the pending placement for the Student did not accept the Student.[33]

The hearing took place remotely via the Zoom platform on December 5, 2024 and December 11, 2024 and was a closed hearing. Before commencing the hearing, the undersigned addressed the Parents' written objections to the District's witnesses.[34] The Parents objected to School Psychologist 2 and Occupational Therapist 2 because they cannot testify to the Student's current needs and were not present at the May 2024 IEP meeting. The District argued these witnesses were involved in the Student's evaluation in 2022 and attended the Student's eligibility meeting and can testify regarding the assessments administered to the Student and address the Student's education needs. The undersigned struck these witnesses because the School Psychologist 1 and Occupational Therapist 1 can testify to the Student's current educational needs. The Parent's objected to Speech Pathologist 1 from testifying at this proceeding since she is not the Student's current speech pathologist and the current Speech Pathologist 2 can testify to the Student's needs. The District indicated this witness was also involved the reevaluation of the Student and can testify to her assessments. The current Speech Pathologist 2 has only been working with the Student since August, 2024. Since the Speech Pathologist 2 has only been working with the Student for a short period of the time, the undersigned denied the request to strike Speech Pathologist 1. The Parents' objected to the Assistant Principal testifying because her testimony would be duplicative. The District countered this witness served as the LEA representative at the May 2024 IEP and has been an active participant in supporting the Student and is in regular communication with the Parents. The undersigned denied the Parents' request to strike this witness and indicated her testimony should not be duplicative.

At this hearing, the Parents called one primary witness, the District called four primary witnesses and the parties called four mutual witnesses.[35] Both Parents testified at the hearing.[36] Admitted into the record were Parents' Exhibits PD 4 through PD 7, PD 22 and PD 24; District's Exhibits SD 12, SD 13, SD 21 through SD 24, SD 28, SD 30, SD 31, SD 34, SD 35 and SD 38; and Joint Exhibits J 2, J 7, J 11, J 13, J 14, J 16, J 17, J 22 and J 23.

---

[28] IHO Ex. 24.
[29] IHO Ex. 27.
[30] IHO Ex. 27.
[31] IHO Ex. 27.
[32] IHO Ex. 27.
[33] IHO Ex. 27
[34] IHO Ex. 28.
[35] Personally identifiable information is found in Appendix A.
[36] Personally identifiable information is found in Appendix A.

On December 12, 2024, via mail, the parties submitted their written closing statements and supporting case law. The decision of the IHO is due within ten business days of the conclusion of the hearing.[37] As such, the IHO did not have the benefit of a transcript. This decision is based on the IHO's copious personal notes and recollection of the testimony provided at the hearing. In rendering this decision, the IHO considered all the documents admitted into evidence, the testimony of the witnesses, the parties' closing arguments, the parties' suggested case law, as well as the IHO's own independent research. This decision was issued within ten business days as required by Illinois law.[38]

## ISSUE AND REQUESTED REMEDIES.

The issue to be determined is as follows:

   a. Whether the District's proposed placement decision at the May 9, 2024 IEP meeting to place the Student at a private therapeutic day school for the 2024-2025 school year is the least restrictive environment to address the Student's behavioral needs, social/emotional needs, communication needs and sensory dysregulation and to enable the Student to make appropriate progress in light of the Student's needs?[39]

   Defense:  The District's proposed placement for the Student to attend a private therapeutic day school is the least restrictive environment to meet the Student's educational needs which includes academics, communication, behavior and, social/emotional skills and to enable the Student to make progress in light of the Student's unique circumstances.[40]

The Parents' remedies are as follows:

   a. Order the Student to be placed at an appropriate, mutually agreeable therapeutic day school program.[41]

   b. Order the Student to remain at K Elementary School until a therapeutic day school program is located for the Student.[42]

The District's remedies are as follows:

---

[37] 105 ILCS 5/14-8.02a(g55)(5).
[38] 105 ILCS 5/14-8.02a(g55)(5).
[39] IHO Ex. 21.
[40] IHO Ex. 21 & 27.
[41] IHO Ex. 21.
[42] This remedy was requested at the hearing and is not contained in the Revised Preparing Report and Order.

    a. Find the May 9, 2024 IEP provided the Student with a FAPE in the least restrictive environment to meet the Student's unique needs and order the implementation of the May 9, 2024 IEP.[43]

    b. Deny the Parents' request for reimbursement for expenses and for compensatory education.[44]

## JOINT STIPULATION OF FACTS[45]

The parties to this due process hearing agree to the following stipulations of fact:

1. The Parties have agreed that a therapeutic day school placement which provides for a program and services in a special education environment for 100% of the Student's school day is appropriate to meet the Student's educational needs.[46]

2. The Parties have agreed that a placement which provides for participation in the general education environment for less than 40% of the Student's school day is not appropriate to meet the Student's educational needs.[47]

3. The Parties have agreed to the credentials of the school district witnesses who have testified at the hearing, marked at SD- 28, 30, 31, 33, 34, 35, and 38.[48]

## FINDINGS OF FACT.

To the extent that a Finding of Fact adopts one version of a matter on which there is conflicting evidence, the evidence adopted has been determined to be more credible than the conflicting evidence. After considering and reviewing all the evidence as well as the arguments of the parties, the IHO's Findings of Fact are as follows:[49]

## A. THE NEEDS OF THE STUDENT.

1. The Student was diagnosed with Autism in June 2016 by Lurie Children's Hospital in June 2015 and was found eligible for special education services under the category of Autism after being evaluated by Anne Reid Early Childhood Center.[50] The Student

---

[43] IHO Ex. 21.
[44] IHO Ex. 21.
[45] IHO Ex. 30.
[46] IHO Ex. 30.
[47] IHO Ex. 30.
[48] IHO Ex. 30.
[49] All the evidence admitted into evidence was reviewed in this case, however, the Findings of Fact only include the exhibits which support the Findings of Fact in this case.
[50] J-2, p. 027 & 29.

continues to remain eligible for special education and services under the Autism category.[51] The Student requires specialized instruction, accommodations and modifications to improve her emotional regulation skills, social skills, expressive, receptive and functional communication, articulation, literacy, numeracy, written expression, motor skills, sensory processing skills and life skills.[52]

2. The Student's Autism is severe. School Psychologist 1 explained she does not know where the Student falls on the Autism spectrum; however, the Student's needs are severe.[53]

3. The Student has significant communication deficits in the area of expressive language, functional communication, verbal expression and pragmatics which contribute to the Student's behavioral issues in the school setting.[54] The Student's deficits with expressive/pragmatic language affects the Student in communicating her ideas, wants and needs.[55] The Student is a developing total communication communicator.[56] The Student uses an AAC device to communicate.[57] The Student uses an AAC device with Lamp Words for Life on an accent device as her primary means of communication.[58] The Student also uses spoken words, word approximations, and low-tech functional communication phrases.[59] The spoken communication consists of 1 to 2 words and 1 to 4 words on the AAC device.[60] School Psychologist 1 explained the Student uses verbalizations, gestures, the AAC device and body language to communicate.[61] The Student prefers to verbalize an answer with one word utterances.[62] The Student has deficits with speech sound errors that are developmentally inappropriate for her age and has difficulty with motor speech.[63] The Private BCBA explained the Student's communication deficits are contributing to the Student's inappropriate behaviors.[64]

4. The Student has extensive sensory needs which contribute to the Student's inappropriate behaviors in the school setting. The Student gets defensive in the classroom to loud noise, unexpected noise, unexpected touching and avoids auditory

---

[51] J-13, p. 464.
[52] J-2, p. 023.
[53] Testimony of School Psychologist 1.
[54] J-13, p. 567.
[55] J-2, p. 035.
[56] J-2, p. 019.
[57] Testimony of Parents, Speech/Language Pathologist 1 and 2, and School Psychologist 1.
[58] J-2, p. 019.
[59] J-2, p. 019.
[60] J-2, p 036. J-13, p. 469.
[61] Testimony of School Psychologist 1.
[62] Testimony of School Psychologist 1.
[63] J-13, p. 467.
[64] Testimony of Private BCBA.

input.[65] The Student seeks out items to put into her mouth and wears a chewy necklace to distract the Student from putting other items in her mouth.[66] The Student refuses to wear noise cancelling headsets; however, the Student will wear non-cancelling music headphones.[67]

5. The Student exhibits fine motor deficits. The Student struggles with unzipping her backpack and taking items out of her backpack because the Student always has a fidget in one hand.[68]. The Student has a goal with the Occupational Therapist 1 and the Learning Behavior Specialist to learn how to remove items and take them to their location such as a talker, lunchbox and water bottle.[69] The Private BCBA is working in the home with the Student to take socks on and off to help the Student develop her fine motor skills.[70]

6. The Student possesses significant deficits with emotional regulation. The Student will scratch, bite, scream, engage in self-harm which includes biting her arms when she is dysregulated during transitions, when given directives that she does not want to attempt and when the Student is told no.[71] The District's functional behavior assessment indicates the Student engages in three targeted behaviors.[72] The Student engages in elopement which is running away or walking away from a designated or expected area.[73] The Student engages in physical aggression which includes physical contact or attempt of physical contact with others or self, such as scratching, biting, pinching, hitting or pushing.[74] The Student engages in verbal outbursts which are increased voice volume, angry or upset tone, whining, crying, laughing/giggling or screaming.[75] The Student's behaviors occur during transitions, whole group instruction and in a work station with a teacher or at her desk.[76] The targeted behaviors are more likely to occur when the Student is asked to wait or told she cannot do something immediately.[77]

7. The Student exhibits deficits in her social interactions with her peers. The Student requires increased functional skills, visual supports, highly motivating materials and prompting to engage with others, respond to questions, take turns with others and

---

[65] Testimony of Occupational Therapist 1.
[66] Testimony of Occupational Therapist 1. J-13 p. 466
[67] Testimony of Occupational Therapist 1.
[68] Testimony of Occupational Therapist 1.
[69] J-13, p. 480
[70] PD-24, p. 015.
[71] J-13, p. 469.
[72] J-13, p. 505.
[73] J-13, p. 505.
[74] J-13, p. 505.
[75] J-13, p. 505.
[76] J-13, p. 505.
[77] J-13, p. 506.

understand how her actions affect others and her socially.[78]  The Private BCBA's report indicates the Student needs ABA services to address her deficits in social interactions.[79] The Student has deficits in social-emotional reciprocity, failure to engage in play and make friends and abnormalities in eye contact and body language and failure to have a normal back and forth conversation.[80]

8. The Student has significant deficits with self-care and daily living skills. The Mother explained the Student is not potty trained, will flush items down the toilet, is messy when she eats, needs a lot of adult support to dress and has to be kept away from knives.[81]  The Private BCBA is working to assist the Student with bathing, which is a non-preferred task, toileting and washing hands.[82] The Student will wash hands after using the washroom if prompted.[83]

9. The Student is not dysregulated on the bus when being transported to school and is not dysregulated when transitioning into the classroom when she arrives in school.[84] The Director of Special Ed explained the only incidents with transportation was a report of the Student biting another student once and the bus driver having to wait three minutes for the Student to get on the bus in front of her home.[85] The Assistant Principal explained the Student is greeted at the bus by a paraprofessional and is happy, smiling and giggling.[86]  The Mother indicated she received a communication in October at a conference with Learning Behavior Specialist, School Psychologist 1 and the Principal about the Student being dysregulated for an hour when she arrives at school.[87] Learning Behavior Specialist indicated the Student is not dysregulated when she arrives at school and is happy and giggling.[88]

10. The Student is dysregulated being transported in a car with her Parents for longer trips and suffers from motion sickness. Since the Student was two years old, she has suffered with motion sickness if she travels for over thirty minutes and needs to take Dramamine.[89] For the past six to eight months, the Student has had severe anxiety being in the car with her Parents and will become aggressive, dysregulated, engage in self-

---

[78] J-13, p. 475.
[79] PD-24, p. 003
[80] PD-24, p. 003.
[81] Testimony of Mother.
[82] Testimony of Private BCBA.
[83] Testimony of Private BCBA.
[84] Testimony of Director of Special Ed, the Assistant Principal, Principal, School Psychologist 1 and Learning Behavioral Specialist.
[85] Testimony of Director of Special Ed.
[86] Testimony of Assistant Principal.
[87] Testimony of Mother.
[88] Testimony of Learning Behavior Specialist.
[89] Testimony of Parents.

injurious behavior or bite her sister.[90] If there is too much traffic or long waits at the traffic signal, this triggers the Student's dysregulation.[91] The Parents have difficulty getting the Student to the bus on time in the mornings.[92] The Mother emailed the District on September 23, 2024 regarding those difficulties.[93] If the Student is with the nanny in the mornings, the nanny has to Facetime the Mother to assist with getting the Student on the bus.[94]

11. The Student's Transition Plan is silent concerning the Student's motion sickness. The Transition Plan states the Student uses a communication system and has a Behavior Intervention Plant that needs to be followed on the bus.[95] The Student is required to be secured in a child safety restraint (safety vest, convertible car seat, infant car seat etc.).[96]

## B. ATTENDANCE AT K ELEMENTARY SCHOOL

12. The Student was transferred from R Elementary School to a structured learning classroom for 4th grade at K Elementary School for the 2023-2024 school year.[97] The Student was in a classroom with approximately ten students.[98] Some of the students were pulled out of the classroom to receive minutes for gen ed specials.[99] There were four paraprofessionals, an occupational therapist, a school psychologist and a speech/language pathologist in the classroom to provide related services in a group and individual setting and were also in the classroom to handle any crisis situations.[100]

13. Despite the small classroom setting, the Student was having issues regulating her behavior and with transitions. The Student was not consistently participating in the group activities in the classroom and was having trouble transitioning from one activity or to another space.[101] The staff had to provide the Student with 1:1 adult support and also had to have two adults support the Student during transitions to prevent the Student from accessing her peers which was followed by physical aggression.[102] The demands being placed on the Student were low and the staff was struggling to get the Student to access her IEP goals.[103]

---

[90] Testimony of Parents.
[91] Testimony of Parents.
[92] Testimony of Parents.
[93] PD-22.p. 109-110.
[94] Testimony of Mother.
[95] J-13, p.495.
[96] J-13, p. 495.
[97] Testimony of Mother.
[98] Testimony of Learning Behavior Specialist.
[99] Testimony of Learning Behavior Specialist.
[100] Testimony of Learning Behavior Specialist.
[101] Testimony of Learning Behavior Specialist
[102] J-13, p. 499.
[103] J-13, p. 497.

14. An IEP meeting was held on May 9, 2024 for the Student's annual review to review the Student's progress. The participants in the meeting included the Parents, the Parents' IEP Coach, the Learning Behavior Specialist, the Assistant Principal, Occupational Therapist 1, School Psychologist 1, and the Director of Special Ed.[104]

15. At the IEP meeting, the IEP team indicated the Student's needs can no longer be met at K Elementary School. The Student is not making progress on her goals and is regressing.[105] A placement change was discussed and the District staff recommended the Student's placement be changed to a private day school.[106] The District staff believed this placement could possibly minimize possible future transitions and this placement would benefit the Student with access to a variety of services, more wraparound supports for the family, responsivity to specialized therapeutic approach as specified by SBT/Universal Protocols when it is being provided as well as increased opportunity for co-implementation of services.[107] The Assistant Principal indicated private day schools have buildings designed to accommodate students with communication and sensory needs.[108] Occupational Therapist 1 and the Learning Behavior Specialist explained the Student is not making progress and is regressing and they can no longer meet her needs.[109] The school is not safe for the Student and the other students.[110] The Parents requested additional time to allow to implement SBT with the Student and to increase the time with the RBT in the structured learning classroom.[111] The Parents wanted the Student to continue to have consistency since the Student had a lot of inconsistencies in the school environment.[112] The Director of Education explained the Student needs more therapeutic interventions due to increased aggression with staff and peers and lack of progress on goals.[113]

16. The Student's May 9, 2024 IEP must be implemented by the private day school. The Student is required to receive 360 minutes of direct speech/language services per month, 180 minutes per month of counseling services and 180 minutes per month of occupational therapy.[114] The IEP also calls for 300 minutes of occupational therapy consult minutes

---

[104] J-13, p 497.
[105] Testimony of Learning Behavior Specialist, School Psychologist 1 and Occupational Therapist 1.
[106] J-13, p. 501 & 502.
[107] J-13, p. 500.
[108] Testimony of Assistant Principal.
[109] Testimony of School Psychologist 1 and Occupational Therapist 1.
[110] Testimony of Behavior Specialist.
[111] J-13, p. 500 – 501.
[112] J-13, p. 500-501. Testimony of Parents.
[113] Testimony of Director of Special Ed.
[114] J-13, p. 491

per school year, 20 minutes per month of speech/language consult minutes, and 60 minutes per month of consult counseling services.[115]

17. The May 9, 2024 IEP requires the Student to receive linguistic accommodations which includes a speech generated device, core boards and functional communication boards.[116] The Student is also required to have access to a modeling of communication using Augmentative and Alternative Communication (AAC), wait time, prompting, gestural and visual cues.[117]

18. The May 9, 2024 IEP provides for the Student to receive additional adult support throughout her day to assist with safety, transition and instruction.[118] The IEP requires the Student to receive the following supplemental accommodations and services in all of her classes:

   a. Individual visual schedule, access to alternative seating, reduce clutter around her and sit in a designated spot in large group settings.[119]
   b. Staff is required to continue to look for and expand on reinforcers to reduce satiation and increase interests, contingency statements, use high rates of reinforcement for non-preferred tasks, reinforcement system and mini schedule.[120]
   c. AAC device, visual supports to aid transitions, social stories, access to low tech picture icons/boards to help support communication, calculator, manipulatives for math (visuals, real-life etc.).[121]
   d. Extended wait time, individual picture schedule, allow additional time to encourage independence in life skills activities.[122]
   e. Access to sensory supports throughout the school day (regular walking breaks, oral motor supports, fine motor supports, alternative seating), organized work bins for materials (scissors, markers, glue etc.) and self-management visuals.[123]
   f. Modeling of language on AAC device and/or low-tech system.[124]

---

[115] J-13, p. 491.
[116] J-13, p. 474.
[117] J-13, p. 474.
[118] J-13, p. 489.
[119] J-13, p. 489.
[120] J-13, p. 489.
[121] J-13, p. 489.
[122] J-13, p. 489.
[123] J-13, p. 489.
[124] J-13, p. 489.

19. The May 9, 2024 IEP requires the implementation of seven functional/academic goals.[125] The goals are currently being implemented by a learning behavior specialist, a speech-language pathologist, the IEP team, an occupational therapist, and the learning behavior specialist team.

20. There is no testimony or evidence that the District invited anyone from a prospective private day school to attend the May 9, 2024 IEP meeting to discuss the location of services. There is no evidence or testimony of any discussion at the May 9, 2024 IEP meeting of potential private day schools that could implement the Student's IEP. Occupational Therapist 1 is not familiar with private day schools in Illinois.[126] School Psychologist 1 explained that it is not a typical procedure to have an IEP meeting to discuss the physical setting at a placement meeting.[127] The District normally speaks to the parents and may follow up with the parents regarding the location of the services.[128] The Learning Behavior Specialist explained she recommended a placement change but not a specific school.[129] The Learning Behavioral Specialist has never been to Little Friends, Forte and Chicago Autism Academy.[130]

## C. <u>LOCATION OF SERVICES</u>

21. The District commenced a search for a location of services to implement the Student's May 9, 2024 IEP. The Supervisor of Special Ed indicated the search commenced after a mediation session in July.[131] The Supervisor of Special Ed indicated ten referral packets were signed and sent out in July, 2024.[132] Some of the schools included in the packets were Forte, Little Friends, Chicago Autism Academy, Peacock, Trinity, Guiding Light, and Able Academy.[133]

22. The Supervisor of Special Ed, who is responsible for locating an out of district placement for the Student, was not in attendance at the May 9, 2024 IEP meeting.[134] The Supervisor of Special Ed indicated she has reviewed the Student's IEPs, evaluations, goal updates and behavior data and sees the Student once a week.[135]

---

[125] J-13, p. 477 – 483.
[126] Testimony of Occupational Therapist 1.
[127] Testimony of School Psychologist 1.
[128] Testimony of School Psychologist 1.
[129] Testimony of Learning Behavior Specialist.
[130] Testimony of Learning Behavior Specialist.
[131] Testimony of Supervisor of Special Ed.
[132] Testimony of Supervisor of Special Ed.
[133] Testimony of Supervisor of Special Ed.
[134] Testimony of Supervisor of Special Ed.
[135] Testimony of Supervisor of Special Ed.

23. The Supervisor of Special Ed does not have personal knowledge of the private day schools available to meet the needs of the Student. The Supervisor of Special Ed has reached out to the Parents for suggestions of potential placements for the Student, has reached out to her colleagues who are familiar with programs at private day schools and is doing her own on-line research.[136] The Supervisor of Special Ed has filtered the ISBE website to locate private day schools for the Student.[137] The Supervisor of Special Ed has researched one private school on-line and shadowed the Principal.[138] This school has a school psychologist, provides coaching every day, has one or two BCBAs, a restroom in the classroom, integrated services, group and individual instruction, a sensory and movement room and a kitchen and mock apartments to practice life skills.[139]

24. The Parents have toured four private day schools. The Mother believed Little Friends and Guiding Light could meet the needs of the Student.[140] Both private day schools did not have an opening in a classroom that could meet the Student's needs.[141]

25. The District has no travel restrictions for locating a private day school. The Supervisor of Special Ed indicated she hoped to locate a closer private day school; however, she has no restrictions on the length of travel time for the Student and is looking for the best education available for the Student and consistency for the Student is a priority.[142]

26. The District has no exclusionary factors for locating a placement for the Student. The Director of Special Ed explained there are no exclusionary factors and the District is tasked with locating a private day school to meet the needs in the IEP and approved by ISBE.[143] The Supervisor of Education explained that any school certified for children with Autism and approved by the ISBE would be able to support the Student.[144] Both Parents had toured Forte with the Supervisor of Special Ed and the Father had a conversation with the Supervisor of Special Ed and indicated he and his wife were concerned that Forte was not familiar with the Student's communication device.[145] The Principal had no knowledge of AAC Devices and was not sure the knowledge of his staff with AAC devices.[146] The lobby was very noisy and chaotic and two staff members were arguing in the hallway.[147] The Father communicated this conversation outside the

---

[136] Testimony of Supervisor of Special Ed.
[137] Testimony of Supervisor of Special Ed.
[138] Testimony of Supervisor of Special Ed.
[139] Testimony of Supervisor of Special Ed.
[140] Testimony of Mother.
[141] Testimony of Mother.
[142] Testimony of Supervisor of Special Ed.
[143] Testimony of Director of Special Ed.
[144] Testimony of Supervisor of Special Ed.
[145] Testimony of Parents.
[146] Testimony of Mother.
[147] Testimony of Parents.

Supervisor of Special Ed's car. Then they went to the Parents' car and discussed this further.[148] The Parents indicated the Supervisor of Special Ed was in agreement.[149] The Supervisor of Special Ed indicated she does not recall the details of the conversation with the Parent but did get a sense the Parents did not approve of the placement and does not recall agreeing with the Parents.[150] The Supervisor of Special Ed later indicated Forte employs a Speech/Language Professor from Lewis University.[151] Do not find the Supervisor of Special Ed testimony credible that she does not recall having this conversation. Find the Parents very credible because they both provided a detailed account of the conversations with the Supervisor of Special Ed after the tour of Forte.

27. The District still has not located a private day school to place the Student.[152] The Supervisor of Special Ed and the Director of Special Ed indicated Forte had accepted the Student.[153] Their testimony is not credible. There is no email or acceptance letter indicating Forte had a placement for the Student and they never informed the Parents the Student had been accepted at Forte.[154] The Director of Special Ed claims she did not inform the Parents because it was too soon in the process and the Parents were interested in Little Friends if Little Friends accepted the Student.[155] The Director of Special Ed and the Supervisor of Special Ed explained the District will have to revisit the schools previously contacted to try to locate a private day school for the Student.

28. The District has not held an IEP meeting since May 9, 2024 to address the failure to locate a private day school for the Student. The Supervisor of Special Ed indicated some private schools did not accept the Student because of the Student's toileting issues and staffing issues.[156] The Supervisor of Special Ed was informed one placement believed the Parents would not collaborate with the staff at their facility since they indicated they would have to discuss the placement with their attorney.[157] The Supervisor of Special Ed indicated the District could provide a 1:1 aid for the Student.[158] No meeting was held to discuss providing staffing assistance to a potential placement.[159]

29. No witnesses were called to testify from a private day school to establish the private day school can implement the Student's May 9, 2024 IEP and meet the needs of the Student.

---

[148] Testimony of Father.
[149] Testimony of Parents.
[150] Testimony of Supervisor of Special Ed.
[151] Testimony of Supervisor of Special Ed.
[152] Testimony of Supervisor of Special Ed and Director of Special Ed.
[153] Testimony of Supervisor of Special Ed and Director of Special Ed.
[154] Testimony of Supervisor of Special Ed and Director of Special Ed.
[155] Testimony of Supervisor of Special Ed.
[156] Testimony of Supervisor of Special Ed.
[157] Testimony of Supervisor of Special Ed.
[158] Testimony of Supervisor of Special Ed.
[159] Testimony of Supervisor of Special Ed.

There is no evidence of any additional referral packets being submitted to the Parents to sign since the first ten referral packets were submitted and signed in July 2024. There is no evidence of any acceptance letters or emails indicating the Student has been accepted at a private day school.

30. While the District locates a private day school for the Student, the Student is attending 5th grade at K Elementary School for the 2024-2025 school year. The Student is struggling in the structure learning classroom with only five to six students.[160] There are five or six adults in the classroom which includes the instructor and related service providers.[161] All of the group sessions have been moved into the classroom to reduce the Student's transitions.[162] The Student is only present for group activity for 31% of the time and 29% for individual sessions.[163]

### **CONCLUSIONS OF LAW AND DISCUSSION OF THE ISSUE**

    a. **Whether the District's proposed placement decision at the May 9, 2024 IEP meeting to place the Student at a private therapeutic day school for the 2024-2025 school year is the least restrictive environment to address the Student's behavioral needs, social/emotion needs, communication needs and sensory dysregulation and to enable the Student to make appropriate progress in light of the Student's needs?[164]**

Based on the above Findings of Fact, the parties' closing statements and provided case law, and this IHO's own legal research, the Conclusions of Law are as follows:

A school district must provide children with disabilities with a free appropriate public education ("FAPE") and to the "maximum extent appropriate with nondisabled children.[165]" Children with disabilities shall only be removed from the regular educational environment "when the nature or the severity of the disability is such that the education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.[166] IDEA creates a strong preference in favor of mainstreaming handicapped children by educating them in the least restrictive environment.[167] Regular classes, however, may not be the least restrictive environment for every child who possesses a disability.[168]

---

[160] Testimony of School Psychologist 1.
[161] Testimony of School Psychologist 1.
[162] Testimony of Learning Behavior Specialist.
[163] SD-24, p.144.
[164] IHO Ex. 21.
[165] *Beth B. v Van Clay,* 282 F.2d 493 (7th Cir.2002). See also, 20 U.SC. § 1412(a)(1) and 1412(a)(5).
[166]  20 U.S. C §1412(a)(5).
[167] *S. v. Reedsburg School District* 302 F. Supp. 2d 959 (W.D. Wis. 2003).
[168] *Questions and Answers on Endrew F. v. Douglas County School District Re-1, 71 IDELR 68 (*U. S. Dept. of Education, Dec. 2017).

The test is twofold. The first determination is whether the school district complied with the procedures set forth in the Act.[169] The second determination is whether the individualized educational program developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits.[170] The Supreme Court in *Endrew F. v. Douglas County School District* further clarified the standard previously provided in the Rowley case requires the school district to ""offer an IEP reasonably calculated to enable the child to make progress appropriate in light of the child's circumstances" in order to meet the substantive obligations under the IDEA.[171]

The appropriateness of an IEP "can only be judged by examining what was objectively reasonable at the time [the team created the IEP.]"[172] An IEP may not be determined to be inadequate based upon testimony and evidence that were not before the school district when the IEP was developed.[173]

A placement decision is to be based on the IEP and is to be determined annually.[174] The placement decision is to be made "by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data and the placement options."[175] The placement decision must be determined on an individual, case-by case basis depending on the child's individual needs and circumstances.[176] The FAPE determination is at the "threshold of the placement inquiry.[177] The federal regulations and the Illinois Code require the school district to provide a continuum of alternative places to meet the needs of the child with a disability for special education and related services.[178] Under Federal Regulation 34 CFR § 300.551(b)(1), the school district must maintain a continuum of program options which range from regular classrooms with supplementary aids to separate schools and residential facilities.[179] The federal regulations indicate a child should not be removed from a regular classroom "solely because of needed modifications in the general education curriculum."[180]

The Seventh Circuit has not adopted any multifactor test for determining whether a child must remain in a regular school.[181] To determine if the placement is in the least restrictive environment, the inquiry is whether the child's education in the conventional school was

---

[169] *Bd. of Education v. Rowley* 458 US 176, 206-207, See also, *Beth B. v Van Clay* 282 F.2d 493 (7th Cir.2002).

[170] Bd. of Education v. Rowley 458 US 176, 206-207.

[171] *Endrew F. v. Douglas County School District RE-1,375 S. Ct. 988* (2017)

[172] *B. G. v. City of Chicago Sch. Dist. 299,* 69 IDELR 177 (N. D. Ill, 2017) (quoting *M. B. v. ex rel. Berns v. Hamilton Southeastern Schools*, 668 F. 3d 851, 863 (7th Cir., 2011) (internal citations omitted.). See also, *District of Columbia v. Walker,* 54 IDELR 271, *109 F. Supp.3d 58 (D.C. D.C. 2015).*

[173] *A. G. and JG v. Bd. of Ed. Of Arlington Cen. Sch. Dist.*, 69 IDELR 210 (S. D. NY*). See* also, *B.L. v. New Britain Bd. of Ed., 394 F. Supp.2d 522 (D. C. Conn. 2005)*

[174] 34 C.F. R. § 300.116(b).

[175] 34 C.F.R §300.116(a)

[176] *Letter to Trigg,* 50 IDELR 48 (OSEP, 2007).

[177] *Beth B. v. Van Clay,* 36 IDELR 121 (7th Cir. 2002)

[178] 34 C.F.R. §300.115. 23 Ill. Adm. Code § 226.300.

[179] 34 CFR § 300.551(b)(1).

[180] 34 C.F.R.§ 300.116(e).

[181] *Bd. of Ed. Of Township High School District No. 211 v. Ross,* 47 IDELR 241 (7th Cir. 2007). See also, *Beth B. v. Van Clay*, 282 F.3d 493, 499 (7th Cir. 2002).

satisfactory and if not whether reasonable measures would have made the child's education satisfactory.[182] The preference for mainstreaming must be balanced against the benefits that can be derived from the services that can be provided in a segregated setting.[183] It is not enough to show a child is obtaining "some benefit, no matter how minimal" to show a school district violated the least restrictive environment requirement.[184] In determining the least restrictive environment, consideration must be given to any potential harmful effects the placement may have on the child.[185] Behavior of the child is a permissible factor in determining the least restrictive environment for the child's education and a school district is not required to place a child in a regular classroom where the child's behavioral problems interferes with the ability of the other students to learn or threatens the safety of the other students.[186]

School districts have significant authority to determine the school site for providing IEP services; however, a school district must determine the placement based on the child's individual needs.[187] The location of the placement should be as close as possible to the child's home.[188] Under the Illinois Administrative Code (Code), a school district should make every effort to limit the child's travel to not more than one hour each way to and from the private school.[189] The school district is also required to schedule the transportation in such a way that the child's health and ability to relate to the educational experience is not adversely affected.[190] In *J. T. v. District of Columbia,* 80 IDELR 62 (D.C. 2022), the Court held that since the child's IEP did not mention the child's intolerance for long commutes, a placement cannot be deemed inappropriate because the school district failed to anticipate the parent's concerns where the IEP is silent.

Under Federal Regulation 34 CFR § 300.325(a)(2), before placing or referring a child to a private school or facility, the school district must ensure a representative of the private school or facility attends the IEP meeting to develop the child's IEP and if a representative is unavailable must use other methods to ensure participation. The Code requires the IEP Team to invite representatives of potential services providers to assist in identifying or verifying the appropriate placement for that child when it appears the child will require a placement in a nonpublic special education facility.[191]

A school district does not commit a per se violation of the IDEA but not specifying the anticipated school where special education services will be delivered within a child's IEP.[192]

---

[182] *Bd. of Ed. Of Township High School District No. 211 v. Ross,* 47 IDELR 241 (7th Cir. 2007).
[183] *MR v. Lincolnwood Bd. of Ed., District 74,* 843 F. Supp. 1236, 20 IDELR1323 (N. D. IL, 1994).
[184] *Bd. of Ed. Of Township High School District No. 211 v. Ross,* 47 IDELR 241 (7th Cir. 2007).
[185] 34 C.F. R. § 300.116(d).
[186] *In re: Student with a Disability,* 117 LRP 20573 (ISEA, 2017). See also, *Clyde K and Sheila K v. Puyallup School Districts,* 21 IDELR 664 (9th Cir., 1994); *MR by RR v. Lincolnwood Bd. of Ed., District 74,* 843 F.Supp. 1236 (N.D. Ill 1994).
[187] *Doug White v. Ascension Parish School Board,* 343 F.3d 373 (5th Cir. 2003). *Gwinnett County School District,* 64 IDELR 122 (GSEA 2013).
[188] *Letter to Fischer,* 21 IDELR 992 (OSEP 1994)
[189] 23 Ill Admin. Code Section 226.750(b)((2).
[190] 190 23 Ill Admin. Code Sec. 226.750(b)(3).
[191] 23 Ill. Admin. Code Sec. 223.330(a).
[192] *Rachel H. v. Dept. of Ed. State of Hawaii,* 70 IDELR 169 (9th Cir. 2017). See also, *T.Y. v. New York City Dept. of Education,* 584 F.3rd 412 (2nd Cir. 2009).

Once a school district locates a school or facility that can implement a child's IEP, the assignment of a particular classroom can be an administrative decision provided the determination is consistent with the IEP team's decision.[193] The 9th Circuit, held, "this does not mean school districts have carte balance to assign a child to a school that cannot satisfy the IEP's requirements."[194] The 9th Circuit also explained "Nor does it mean that not identifying a school can never result in a denial of FAPE, especially when a child's disability demands delivery of special education services at a particular facility."[195] This Court explained that a holding in another case that the absence of autistic children, and lack of training for teachers on working with autistic children among other deficiencies made a particular school inappropriate and in such circumstances the failure to identify a school may violate the IDEA.[196]

In *A. K. v. Alexandria City School Board,* 47 IDELR 245 (4th Cir. 2007), The 4th Circuit found a child's IEP was not reasonably calculated to provide a FAPE because the IEP called for an unspecified private day school. In this case, the IEP team determined the child should be placed in an unspecified private day school and the parents, were in agreement, however, they inquired which schools could meet the child's needs.[197] The school district suggested two schools and the parent indicated she did not believe the schools would be appropriate.[198] The meeting concluded without any significant discussion about the appropriateness of the two proposed placements.[199] The parents consulted with experts who informed them the two proposed schools would not be appropriate.[200] The school sent out applications to five schools and two of the schools indicated they could not meet the child's needs.[201] The remaining two schools were the ones identified at the IEP meeting.[202] The 4th Circuit found the IEP team never considered whether these two proposed schools could meet the child's individual needs and one IEP member who testified indicated she had no knowledge of any specific private day schools being considered.[203]

In the instant case, the parties are now in agreement that the least restrictive environment for the Student is in a separate therapeutic day school placement for the Student to receive a FAPE[204] The Parents, however, are raising procedural violations under the IDEA and the Code. The first procedural violation is the failure of the District to invite a representative from a private day school to attend the May 9, 2024 IEP meeting before placing or referring a child to a private

---

[193] *Letter to Fisher,* 21 IDELR 992 (OSEP 1994).
[194] *Rachel H. v. Dept. of Ed. State of Hawaii,* 70 IDELR 169 (9th Cir. 2017). See also, *T.Y. v. New York City Dept. of Education,* 584 F.3rd 412 (2nd Cir. 2009).
[195] *Rachel H. v. Dept. of Ed. State of Hawaii,* 70 IDELR 169 (9th Cir. 2017).
[196] *Rachel H. v. Dept. of Ed. State of Hawaii,* 70 IDELR 169 (9th Cir. 2017).
[197] *A. K. v. Alexandria City School Board,* 47 IDELR 245 (4th Cir. 2007).
[198] *A. K. v. Alexandria City School Board,* 47 IDELR 245 (4th Cir. 2007).
[199] *A. K. v. Alexandria City School Board,* 47 IDELR 245 (4th Cir. 2007).
[200] *A. K. v. Alexandria City School Board,* 47 IDELR 245 (4th Cir. 2007).
[201] *A. K. v. Alexandria City School Board,* 47 IDELR 245 (4th Cir. 2007).
[202] *A. K. v. Alexandria City School Board,* 47 IDELR 245 (4th Cir. 2007).
[203] *A. K. v. Alexandria City School Board,* 47 IDELR 245 (4th Cir. 2007).
[204] JSOF 1 and 2.

day school as required under the federal regulation 34 CFR § 300.225(a)(2) and Section 224.330(a) of the Code. The Findings of Fact unequivocally illustrate no representatives were invited to the May 9, 2024 IEP meeting.[205] The IEP team is not familiar with the private day schools in Illinois and which private day schools can implement the Student's IEP.[206] There was never a discussion at the May 9, 2024 IEP meeting regarding the location of services for the Student.[207] The Student has extensive deficits in the areas of daily living skills, communication, articulation, emotional regulation, social interactions, and fine motor skills that a private day school will need to address for the Student to have access to an education and to receive an educational benefit.[208] This procedural violation amounts to a denial of FAPE The District still has not located a private day school for the Student to attend that can implement the Student's IEP.[209] If the District had invited representatives back in May 2024 to help the District identify or verify private day schools that could implement the Student's IEP, a location may have been found by now that can meet the unique needs of the Student. The District commenced the search for a private day school in July 2024 and it is now December and there is still no placement for the Student.[210] The District failed to produce any witnesses from a private day school to indicate the Student's IEP could be implemented at their private day school and failed to produce any acceptance letters or emails to show the Student has been accepted in any private day school.[211] The Parents have proven the District has committed a procedural violation which has amounted to a substantive violation under the IDEA since the District has denied the Student a FAPE.

Second, the Parents argued the District committed a procedural violation by not specifying the anticipated private day school where the Student will receive the special education services. It is not a per se violation of the IDEA for a school district to not specify the anticipated private day school; however, in this case the Parents have proven the failure to specify the anticipated private day school has amounted to a denial of FAPE. This case is similar to the *Alexandria City School Board* case where the one IEP member had no knowledge of any specific private day school being considered. The Findings of Fact show the IEP team never discussed possible private day schools that could implement the Student's IEP at the May 2024 IEP meeting.[212] None of the witnesses who testified had personal knowledge of the available schools in Illinois that could potentially implement the Student's IEP.[213] Moreover, the Findings of Fact show there are no exclusionary factors for locating a placement for the Student and that any school that is qualified to accept students with Autism can meet the needs of the Student.[214] Under the IDEA, the District is required to consider the unique needs of the Student when

---

[205] FOF 20.
[206] FOF 20 & 23.
[207] FOF 20.
[208] FOF 1, 2, & 5-8.
[209] FOF 27 & 29.
[210] FOF 27 &29.
[211] FOF 29.
[212] FOF 20.
[213] FOF 20 & 29.
[214] FOF 26.

placing a Student to receive special education and related services. There are different levels of Autism and the Student has severe Autism which affects her communication, articulation, basic daily living skills and emotional regulation, social interactions and has toileting issues.[215] The record is devoid of any testimony or evidence of any private day schools that can implement the Student's May 9, 2024 IEP and are willing to accept the Student.[216] Moreover, the Findings of Fact illustrate the Student is not making progress in the 5th grade even though she is in a very small self-contained classroom with very limited transitions and is still not accessing her education.[217] The undersigned is concerned the District will not place the Student at a private day school that can implement the Student's May 9, 2024 IEP and place the Student wherever this is an opening since a placement has not been located for the Student since July, 2024. Based on the foregoing, the District failed to provide the Student with a FAPE by failing to specify the anticipated private school for the Student to attend. The Parents are requesting as a remedy for the undersigned to order the parties to locate a mutually agreeable private day school, however, under the IDEA the District has significant authority in locating the private day school for the Student and is required to locate a private day school that can implement the Student's IEP and provide the Student with an educational benefit.

Third, the Parents contend the District committed a procedural violation by failing to consider the Student's intolerance for long commutes and dysregulation travelling. The Findings of Fact demonstrate the Student was not dysregulated when she arrived at school and show no reports were made that the Student was dysregulated on the bus except for one incident where the Student bit another child.[218] The Student's current transportation plan does not restrict the Student's travel and does not reference the Student's motion sickness.[219] As in the *J. T.* case, the placement cannot be deemed inappropriate where the transportation plan is silent regarding the Student's intolerance for long commutes and dysregulation on the bus. The Parents have failed to prove the District has committed a procedural violation.

Lastly, under the Code, the District should make every effort to limit the Student's travel to not more than one hour each way and the IDEA requires the Student to be located as close as possible to her home school. The Findings of Fact demonstrate that the District was not making every effort to locate a school close to home when the Supervisor of Special Ed indicated there were no restrictions on travel time.[220] Based upon the foregoing, the Parents have proven the District did commit a procedural violation by failing to consider the travel time for the Student in the search for a private day school and to try to make every effort to locate a school within one hour of travel time each way. As a result of this failure, the District has denied the Student a FAPE.

---

[215] FOF 1, 2, & 6-8.
[216] FOF 27 & 29.
[217] FOF 30.
[218] FOF 9.
[219] FOF 10 & 11.
[220] FOF 25.

Based upon the above Findings of Fact and Conclusions of Law, it is hereby ordered:

1. The Student is ordered to remain at Kingsley Elementary School to receive her special education and related services until a placement at a private day school is located for the Student.

2. The District is ordered to hold an IEP meeting within 15 school days from the receipt of this Final Determination and Order to discuss and problem solve locating a private day school for the Student and shall invite representatives of potential services providers to assist in identifying or verifying appropriate private day schools for the Student.

3. The District is ordered to locate a private day school within 45 school days from the receipt of this Final Determination and Order which can implement the Student's May 9, 2024 IEP and has the qualified service providers to implement the related services in the May 9, 2024 which includes 360 minutes of direct speech/language services per month, 180 minutes per month of counseling services and 180 minutes per month of occupational therapy, 300 minutes of occupational therapy consult minutes per school year, 20 minutes per month of speech/language consult minutes, and 60 minutes per month of consult counseling services. The District should make every effort to limit the Student's travel time to not more than one hour each way to the private day school.

4. The District shall maintain records of the private day schools the District has contacted and maintain records of the private day schools which declined to accept the Student and produce these records to the Illinois State Board of Education.

In Accordance with 105 ILCS 5/14-8.02a(h), within 60 school days of receipt of this Order, the District must submit proof of compliance to:

> Illinois State Board of Education
> Program Compliance Division
> 100 North First Street
> Springfield, IL 62777-0001

## NOTICE OF RIGHT TO REQUEST CLARIFICATION

Pursuant to 105 ILCS 5/14-8.02a(h), either party may request clarification of this decision by submitting a written request to the Hearing Officer within five (5) days of receipt of the decision. The request for clarification must specify the portions of the decision for which

clarification is sought. A copy of the request must be mailed to all other parties and the Illinois State Board of Education, Program Compliance Division, 100 North First Street, Springfield, IL 62777. The right to request clarification does not permit a party to request reconsideration of the decision itself and the Hearing Officer is not authorized to entertain a request for reconsideration.

## NOTICE OF RIGHT TO APPEAL

This is the final administrative decision in this matter. Pursuant to 105 ILCS 5/14-8.02a(i), any party aggrieved by this Hearing Officer Determination may bring a civil action in any state court of competent jurisdiction or in a District Court of the United States without regard to the amount in controversy within one hundred and twenty (120) days from the date the decision is mailed to the party.

Dated: December 23, 2024        Leah Trinkala
Impartial Hearing Officer
300 N. Canal St., Suite 1005
Chicago, IL 60606
Phone: 312-286-2882
Email: ltrinkala.education@gmail.com

## APPENDIX A

Courtney Cranston v. Naperville CUSD 203
ISBE Case No. 2024-DP-0219

| Child/Student | Jasmine Chu |
|---|---|
| Location of the Hearing | Remote Hearing |
|  |  |
| K Elementary School | Kingsley Elementary School – Student's current placement |
| R Elementary School | Ranch View Elementary School |
| Parent/Mother | Erin Cranston |
| Parent/Father | Joe Cranston |
|  |  |
| School Psychologist 2 | Rebecca Bruehl |
| Assistant Principal | Emily Cummings |
| Occupational Therapist 1 | Christine Ekis |
| School Psychologist 1 | Erica Galanis |
| Director of Special Ed | Caitrin Gruchot |
| Speech Pathologist 2 | Sarah Healy |
| Supervisor of Special Ed | Ashley Johns |
| Private BCBA | Jordan Kaehler |
| Learning Behavior Specialist | Tara McFarlin |

| Occupational Therapist 2 | Meghan Suman |
|---|---|
| Speech Pathologist 1 | Candace Tablerion |
|  |  |
|  |  |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the Final Decision and Order was sent to the District through its respective counsel identified below and to ISBE by UPS (signature required) and electronic mail and a true and correct copy of the Final Decision and Order was mailed to the Parents by UPS (signature required) and directed to:

Charles Fox, & Julie Welsh, Esqs.
Law Offices of Charles P. Fox
355 W. Dundee Rd., Suite 209
Buffalo Grove, IL 60089
*Electronic mail: cfoxatty@gmail.com*
*Electronic mail: juliewelsh@foxspecialedlaw.com*

and

Laura Sinars & Jessica Carbonaro, Esqs.
Robbins Schwartz
55 W. Monroe St, Suite 800
Chicago, IL 60603
*Electronic mail: lsinars@robbins-schwartz.com*
*Electronic mail: jcarbonaro@robbins-schwartz.com*

and

Erin & Joe Cranston
484 Prairie Knoll Drive
Naperville, Illinois 60565

and

Mr. Andy Eulass
Due Process Coordinator
Illinois State Board of Education
100 N. First Street
Springfield, IL 62777-0001
*Email: aeulass@isbe.net*

On December 23, 2024

23

_____
Leah M. Trinkala
Impartial Hearing Officer
300 N. Canal St, Suite 1005
Chicago, IL 60606
(312) 286-2882 (telephone)
ltrinkala.education@gmail.com